**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MARY ANN HECKMAN,**          )<br>                                                     )<br>                          **Plaintiff,**     )<br>                                                     )<br>v.                                                 )<br>                                                     )<br>**ZURICH HOLDING COMPANY**    )<br>**OF AMERICA, et al.,**               )<br>                                                     )<br>                          **Defendants.** )<br>_____) | **CIVIL ACTION**<br><br>**No. 06-2435-KHV** |

**MEMORANDUM AND ORDER**

Mary Ann Heckman brings suit against Zurich Holding Company of America ("Zurich") and Universal Underwriters Insurance Company d/b/a Universal Underwriters Group ("UUG") alleging retaliatory discharge and defamation under Kansas law. This matter comes before the Court on Defendants' Motion For Protective Order (Doc. #26) and Defendants' Motion For Judgment On The Pleadings (Doc. #27) both filed April 9, 2007. For reasons stated below, the Court overrules the motion for judgment on the pleadings and sustains in part the motion for protective order.

**Legal Standards**

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000); Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528 (10th Cir. 1992). A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). The Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable

inferences from those facts in favor of plaintiff. See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether she is entitled to offer evidence to support her claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although plaintiff need not precisely state each element of her claims, she must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## Factual Background

A comprehensive summary of plaintiff's complaint is set forth in the Court's previous order on defendants' motion to dismiss. See Memorandum And Order (Doc. #22) filed February 28, 2007 at 2-7. Because the focus of the motion for judgment on the pleadings is narrow, the Court will repeat the factual background only as it relates to the motion.

## Analysis

Plaintiff served as defendants' in-house counsel from August of 1995 until February of 2006, when defendants allegedly terminated her employment in retaliation for blowing the whistle on their illegal activity. Kansas subscribes to the doctrine of employment at will. Absent an express or implied contract of fixed duration, or where recognized public policy concerns are raised, employment is terminable at the will of either party. Frye v. IBP, Inc., 15 F. Supp.2d 1032, 1046 (D. Kan. 1998). One exception to this general rule is termination in retaliation for whistleblowing. See Palmer v. Brown, 242 Kan. 893, 900, 752 P.2d 685, 689-90 (1988).

Defendants argue that they are entitled to judgment on the pleadings under Rule 12(c) because as a matter of law plaintiff, as former in-house counsel, should not be permitted to maintain a claim for retaliatory discharge. In the alternative, defendants seek a protective order controlling the disclosure

of confidential information in the case.

**I.     Defendants' Motion For Judgment On The Pleadings**

Defendants argue that the Court should dismiss plaintiff's retaliatory discharge claim under Rule 12(c) because such claim will necessarily require the disclosure of confidential information which plaintiff obtained as in-house counsel for defendants. Kansas courts have not considered whether an in-house attorney may maintain a retaliatory discharge claim against her former employer/client. Some courts have refused to extend the tort of retaliatory discharge to in-house counsel. See Balla v. Gambro, Inc., 584 N.E.2d 104, 108 (Ill. 1991) (in-house counsel generally do not have claim under tort of retaliatory discharge). The overwhelming majority of courts which have considered the issue, however, have permitted in-house attorneys to bring retaliatory discharge claims against their former employers/clients so long as they do not run afoul of their duty of confidentiality. See O'Brien v. Stolt-Nielsen Transp. Group Ltd., 838 A.2d 1076, 1084 (Conn. Super. Ct. 2003) (no persuasive per se rationale for barring wrongful termination suits by in-house attorneys); Crews v. Buckman Labs. Int'l, Inc., 78 S.W.3d 852, 857, 863-64 (Tenn. 2002) (in-house counsel may sue for retaliatory discharge in violation of public policy subject to applicable confidentiality restrictions); Burkhart v. Semitool, Inc., 5 P.3d 1031, 1042 (Mont. 2000) (in-house counsel may bring employment claims contemplated under rules of professional conduct); Willy v. Coastal States Mgmt. Co., 939 S.W.2d 193, 200 (Tex. App. 1997) (plaintiff's status as in-house counsel does not preclude wrongful termination claim if it can be proved without violation of confidentiality obligation); GTE Prods. Corp. v. Stewart, 653 N.E.2d 161, 166-67 (Mass. 1995) (wrongful discharge claim of in-house counsel recognized where claim respects client confidences and secrets); Gen. Dynamics Corp. v. Superior Court, 876 P.2d 487, 490 (Cal. 1994) (balanced considerations favor recognition of wrongful discharge claim for in-house counsel unless suit

cannot proceed without breach of attorney-client privilege); see also Willy v. Admin. Review Bd., 423 F.3d 483, 500 (5th Cir. 2005) (in-house counsel pursuing wrongful discharge claim must comply with duty of confidentiality); Hoffman v. Baltimore Police Dep't, 379 F. Supp.2d 778, 784 (D. Md. 2005) (recognizing that courts permit retaliation claims by in-house counsel, but that such claims do not obliterate client's right to confidences); Meadows v. Kindercare Learning Ctrs., Inc., No. 03-1647-HU, 2004 WL 2203299, at *2-3 (D. Or. 2004) (permitting wrongful discharge claim where client confidences ancillary to such claim); Wise v. Consol. Edison Co. of N.Y., 723 N.Y.S.2d 462, 463 (N.Y. App. Div. 2001) (dismissing wrongful discharge claim of in-house counsel which could not be maintained without improper disclosures of client confidences).

While Kansas courts have not decided whether an in-house attorney may bring suit for retaliatory discharge, defendants argue that the Kansas Supreme Court opinion in Crandon v. State, 257 Kan. 727, 897 P.2d 92 (1995), suggests that Kansas courts would not recognize such a claim. Crandon noted that closeness and trust are essential to the proper function of the relationship between an in-house attorney and her employer/client. Id. at 741-42, 897 P.2d at 103. Borrowing heavily from Balla, an Illinois case, defendants argue that recognition of a retaliatory discharge claim by in-house counsel would effectively chill the attorney-client relationship. See Balla, 584 N.E.2d at 109 (right to sue reduces candor between in-house counsel and employer/client). This notion has been soundly rejected by many courts. See, e.g., O'Brien, 838 A.2d at 1084 (right of action would not unduly impair attorney-client relationship already likely in considerable disarray); Crews, 78 S.W.3d at 861 (no discernable impact on attorney-client relationship unless employer expects counsel to blindly follow mandates in contravention of ethical duties). The Court finds nothing in Crandon which suggests that Kansas courts would refuse to allow in-house counsel to maintain retaliatory discharge claims.

Defendants further argue that permitting in-house counsel to maintain retaliatory discharge claims does not serve the public policy concerns underlying the cause of action. In this regard, Balla notes that retaliatory discharge claims for in-house counsel are unnecessary because attorneys are ethically obligated to report certain wrongful conduct of their clients, which adequately protects the public interest. See Balla, 584 N.E.2d at 108-109 (attorney's ethical obligations sufficient to protect lives and property of citizens without extending retaliatory discharge claim to in-house counsel). This idea has also been widely rejected. See, e.g., Crews, 78 S.W.3d at 860 (sole reliance on mere presence of ethical rules to protect public policy gives too little weight to economic pressures designed to tempt in-house counsel to subordinate ethical standards to corporate misconduct); GTE Prods. Corp, 653 N.E.2d at 166 (public interest better served where in-house counsel's resolve to comply with ethical obligations is strengthened through availability of judicial recourse).

Defendants further argue that imposing liability on employers/clients for discharging in-house counsel is inconsistent with Rule 1.16 of the Kansas Rules of Professional Conduct, which recognizes a client's unlimited right to terminate the attorney-client relationship. See Kan. Rules of Prof'l Conduct R. 1.16 cmt. (client may discharge lawyer at any time, with or without cause). Even if Rule 1.16 grants a client the seemingly absolute right to discharge his attorney, this right may not necessarily be "invoked under all circumstances without consequence." Gen. Dynamics Corp., 876 P.2d at 493. Discussing the right of discharge in the context of in-house counsel, O'Brien stated as follows:

> While the principle that a client has the right to terminate an attorney is sound when the attorney-client relationship is the sole relationship between the parties, even then it is not a completely unfettered right, as the discharged attorney has a right to earned fees. . . . When there is a concomitant relationship . . . of employer-employee, the right to discharge an attorney must be balanced with rights emanating from the second relationship. This court sees no rational basis for denying an employee-attorney the right available to other employees to sue for wrongful or constructive discharge when the suit is premised on protecting a well defined public interest.

O'Brien, 838 A.2d at 1084. The Court does not believe that Rule 1.16 cloaks defendants in absolute immunity against plaintiff's retaliatory discharge claim. To hold that Rule 1.16 affords an employer/client absolute immunity from liability for wrongful termination of in-house counsel would be inconsistent with other areas of employment discrimination law. See Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 179 (3d Cir. 1997) (generally, in-house counsel not barred from suing former employer/client under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.); Golightly-Howell v. Oil, Chem. & Atomic Workers Int'l Union, 806 F. Supp. 921, 924 (D. Colo. 1992) (no authority for proposition that Title VII does not protect in-house counsel).

In the light of the overwhelming authority which permits in-house counsel to sue for retaliatory discharge under state law, the Court does not believe that Kansas courts would prohibit plaintiff from maintaining her whistleblower claim under Kansas law. See Enfield v. A.B. Chance Co., 228 F.3d 1245, 1255 (10th Cir. 2000) (under diversity statutes, federal courts have duty to decide questions of state law even if difficult or uncertain); Weiss v. United States, 787 F.2d 518, 525 (10th Cir. 1986) (federal courts may predict ruling of state's highest court by following policies underlying applicable legal principles and doctrinal trends indicated in those policies). As noted above, however, plaintiff's retaliatory discharge claim must be established within the confines of her duty of confidentiality.

Here, plaintiff's duty of confidentiality is shaped by Rule 1.6 of the Kansas Rules of Professional Conduct, which provides as follows:

> (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
>
> (b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
>
>> (1) to prevent the client from committing a crime; or

> (2) to comply with requirements of law or orders of any tribunal; or
>
> (3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

Rule 1.6 is designed to "facilitate[] the full development of facts essential to proper representation of the client," by encouraging the client "to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter." Id. cmt. The Kansas Supreme Court has noted that "[t]he ethical requirement of confidentiality is . . . interpreted broadly, with the exceptions being few and narrowly limited." In re Bryan, 275 Kan. 202, 222, 61 P.3d 641, 656 (2003).

Plaintiff argues that Rule 1.6(b)(3) permits the disclosure of otherwise confidential information to establish her retaliatory discharge claim, which she argues is "a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client." Defendants respond that the claim or defense exception contemplates only fee disputes between a lawyer and her client.

The comment to Rule 1.6 states that

> A lawyer entitled to a fee is permitted by paragraph (b)(3) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary.

Kan. Rules of Prof'l Conduct R. 1.6 cmt. Although the comment mentions only fee disputes, it does not expressly limit the claim or defense exception to such actions. Indeed, the principle expressed in the comment that a client should not be permitted to exploit an attorney's fiduciary duty applies beyond mere fee disputes. Moreover, the history of Rule 1.6 undermines defendants' argument that Rule 1.6 applies only to fee disputes. Rule 1.6 is taken from the Model of Rules of Professional Conduct ("Model Rules"), which the Kansas Supreme Court adopted as the Kansas Rules of Professional

Conduct effective March 1, 1988.  See Prefatory Rule, Kan. Rules of Prof'l Conduct; Gillespie v. Seymour, 272 Kan. 1387, 1392, 39 P.3d 61, 64 (2002).  In promulgating the Model Rules, the American Bar Association (ABA) undertook to expand the claim or defense exception to the duty of confidentiality which had been expressly limited to fee disputes in the Model Code of Professional Responsibility ("Model Code") – the ABA's predecessor to the Model Rules.  See Annotated Model Rules of Professional Conduct, Rule 1.6, Model Code Comparison 68 (4th ed. 1999) (Disciplinary Rule 4-101(c)(4) of Model Code provides that lawyer may reveal confidences to establish or collect his fee; claim or defense exception of Model Rules "enlarges the exception to include disclosure of information relating to claims by the lawyer other than for the lawyer's fee").

The ABA's formal opinion supports the conclusion that the claim or defense exception applies to plaintiff's retaliatory discharge claim.  ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-424 (2001) (in-house attorney's retaliatory discharge action constitutes "claim" for purpose of claim or defense exception to duty of confidentiality under Model Rule 1.6).  Further, courts which have interpreted Model Rule 1.6 within the context of retaliatory discharge claims by in-house counsel have concluded that the claim or defense exception permits plaintiff to disclose otherwise confidential information which is necessary to establish such claim.  See Crews, 78 S.W.3d at 863 (Rule 1.6 allows in-house counsel to reveal confidences essential to support retaliatory discharge claim); Burkhart, 5 P.3d at 1041 (Rule 1.6 extremely broad; contemplates that lawyer may reveal confidential information to establish employment-related claim); see also Spratley v. State Farm Mut. Auto. Ins. Co., 78 P.3d 603, 610 (Utah 2003) (reversing order prohibiting in-house counsel from disclosing confidential information in prospective suit against employer based on Rule 1.6).

In light of the authority set forth above, the Court finds that plaintiff is entitled to maintain her

retaliatory discharge claim against defendants and is entitled to reveal confidential information under Rule 1.6(b)(3) to the extent necessary to establish such claim. Accordingly, the Court overrules defendants' motion for judgment on the pleadings under Rule 12(c).

## II.     Defendants' Motion For Protective Order

Defendants argue that if the Court permits plaintiff to maintain her retaliatory discharge claim, it should enter a protective order to control the unnecessary disclosure of confidential information. Courts which permit retaliatory discharge claims by in-counsel have recognized the importance of equitable measures, including protective orders, "to permit the attorney plaintiff to attempt to make the necessary proof while protecting from disclosure client confidences subject to [] privilege." Burkhart, 5 P.3d at 1041 (quoting Gen. Dynamics Corp., 976 P.2d at 504); see also Spratley, 78 P.3d at 610 (disclosure of confidential information under Rule 1.6 should proceed carefully and under close court supervision).

Defendants have submitted a proposed protective order. See Combined Memorandum In Support Of Defendants' Motions For Judgment On The Pleadings And For Protective Order (Doc. #28) at 16-21. Plaintiff does not generally object to the issuance of a protective order, but objects to paragraph 12 of defendants' proposed protective order, which purports to allow the parties to disclose confidential materials in this case without waiving privilege as to such materials with respect to third parties. Generally, a voluntary disclosure of confidential information by a client waives any privilege which normally attaches to such material. See United States v. Bernard, 877 F.2d 1463, 1465 (10th Cir. 1989). The Tenth Circuit has previously refused to adopt a so-called "selective waiver" exception to this general rule, noting that such exception constitutes "a leap, not a natural, incremental next step in the common law development of privileges and protections." See In re Qwest Commc'ns Int'l Inc., 450

F.3d 1179, 1192 (10th Cir. 2006).

Defendants argue that this case presents a unique circumstance justifying the inclusion of a selective waiver provision in the protective order. Specifically, defendants argue that (1) fairness demands a selective waiver provision because they will be forced to reveal confidential information in defense of plaintiff's disclosure of other confidential information; and (2) a selective waiver provision will reduce discovery disputes. Because defendants seek an exception to the general waiver rules which would broaden the attorney-client privilege, their request for selective waiver "must be viewed with caution." Id. at 1195.

Because Rule 1.6 adopts broad language which contemplates disclosure of confidential information in a variety of possible claims by an attorney against her client, the Court disagrees with defendants' assertion that this case presents a "special, narrow, factual scenario [involving] an in-house attorney." Defendants are simply faced with a strategic choice concerning the scope and direction of their defense. Even if the Court were to perceive some level of fundamental unfairness in the position of the parties, a selective waiver provision would not promote fairness in this proceeding. Id. at 1196 (selective waiver "far from a universally accepted perspective of fairness").

The Court is also not persuaded that a selective waiver provision would reduce discovery disputes in this case. Defendants' argument rests on the assertion that without a selective waiver provision, they may be more apprehensive in disclosing privileged information in discovery. Short of conjecture, however, defendants present no support for their contention that a selective waiver provision would reduce discovery disputes. Because the Tenth Circuit views selective waiver with disfavor, the Court will not invoke the exception in this case as a tool of convenience.

Because this case involves the potential disclosure of confidential information, the Court finds

that a protective order which limits the unnecessary disclosure of such information is appropriate. Accordingly, the Court sustains in part defendants' motion for protective order. The Court enters the order in the general form which the parties have proposed. It does not necessarily agree that all of the topics which the parties designate as "confidential" are indeed privileged, however, or otherwise exempt from public disclosure in the future. A separate order shall be entered to that effect.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Judgment On The Pleadings (Doc. #27) filed April 9, 2007 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' Motion For Protective Order (Doc. #26) filed April 9, 2007 be and hereby is **SUSTAINED IN PART**. A protective order shall issue by separate order of the Court.

Dated this 8th day of May, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge